UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**VICTOR ARIZA**,

    Plaintiff,

vs.

**SANTI USA CORP. d/b/a LA MARTINA,**
**a Florida for-profit corporation, and**
**LM EUROPE SA, d/b/a LA MARTINA,**
**a foreign for-profit corporation,**

    Defendant.
_____/

## **AMENDED COMPLAINT**

Plaintiff VICTOR ARIZA, through undersigned counsel and for his Amended Complaint, sues Defendant SANTI USA CORP., d/b/a LA MARTINA, a Florida for-profit corporation, and LM EUROPE SA, d/b/a LA MARTINA, a foreign for-profit corporation, and alleges as follows:

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to an internet website for services, to order merchandise, and to secure information about Defendant's stores online. This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property and for compensatory damages to Plaintiff for such trespass. Remedies provided under common law for trespass are not exclusive and may be sought in connection with suits brought under the ADA.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4. Plaintiff VICTOR ARIZA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5. Plaintiff is and at all relevant times has been visually disabled in that he suffers from optical nerve atrophy, a permanent eye disease and medical condition that substantially and significantly impairs his vision and limits his ability to see.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing and accurately visualizing his world and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h).

6. Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available screen reader software.

7. Defendant SANTI USA CORP. is a Florida for-profit corporation authorized to do business and doing business in the State of Florida.  Defendant LM EUROPE SA is a foreign for-profit corporation doing business in the State of Florida but not specifically authorized to do business in the State of Florida. Defendants advertise and sells their merchandise to, and receives payment and revenues from, customers in the State of Florida, including Plaintiff, purposefully target and solicit business from Florida residents through the operation of their owned websites, derive substantial revenues from repeat business transactions in the State of Florida and thus have

more than a slight effect on the commerce of Florida as a result. In this regard, Defendants jointly own, operate, and/or control retail stores selling to the public polo clothing, protective gear, shoes, and accesories, including the store Plaintiff intended to patronize at 1800 Sawgrass Mills Circle, Suite 2400, Sunrise, Florida.

8. Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, in order to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendants were and still are organizations that own, operate, and/or control stores selling to the public polo clothing, protective gear, shoes, and accesories under the brand name "La Martina". The La Martina U.S.-based store in Broward County is open to the public. As the owner and operator of this retail store, Defendants are defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11. Because Defendants operate a store open to the public, the store is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12. Defendants jointly control, maintain, and/or operate adjunct websites, https://www.lamartina.com/lm and www.lamartinausa.com (hereinafter the "Websites"). One of the functions of the Websites is to provide the public information on the various locations of Defendants' stores that sell their merchandise throughout the United States and within the State of Florida. Defendants also sell to the public their merchandise and goods through the Websites.

13. The Websites also service Defendants' physical stores by providing information on its available products and branded merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14. Because the Websites allow the public the ability to locate Defendants' physical stores, purchase merchandise from Defendants that is also available for purchase in its physical stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Websites are an extension of, and gateway to, Defendant's physical stores. By this nexus, the Websites are characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA and thus an extension of the services, privileges and advantages made available to the general public by Defendants through their brick and mortar locations and businesses.

15. Because the public can view and purchase Defendants' merchandise that is also offered for sale by Defendants in their physical store in Broward Couty, Florida and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical store in Broward County, Florida, the Websites are an extension of, and gateway to, the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. § 12181(7)(E). As such, the Websites are intangible services, privileges, and advantages of Defendants' brick and mortar store that must comply with all requirements of the ADA, must not

4

discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded to the non-disabled general public both online and in the physical store.

16.     At all times material hereto, Defendants were and still are organizations owning, operating, and/or cotnrolling the Websites.  Since the Websites are open to the public through the internet, by this nexus the Websites are intangible services, privileges, and advantages of Defendants' brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and in the physical stores.  As such, Defendants have subjected themselves and their Websites to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Websites' access barriers are removed or remedied, Defendants' physical store at 1800 Sawgrass Mills Circle. Suite 2400 Sunrise, Florida, and to larna bout Defendant's brick and mortar store, check store hours and merchandise pricing, purchase merchandise, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the Websites or in Defendants' physical store.

18.     The opportunity to shop and pre-shop Defendants' merchandise that is also available for purchase in the physical store and to sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical store from his home are important accommodations for Plaintiff because traveling outside of his home as a visually disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience.

Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals using the screen reader software.

19. Like many consumers, Plaintiff accesses numerous websites at a time to compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20. During the months of October 2019 and August 2020, Plaintiff attempted on a number of occasions to utilize the Websites to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, and with the intent of making a purchase through the Websites or at one of the Defendant's stores.

21. Plaintiff utilizes screen reader software that allows individuals who are visually disabled to communicate with websites. However, Defendants' Websites contained, and continue to contain, access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. Links not labeled (for both Websites;

b. Mislabeled home button (for both Websites);

c. Mislabeled descriptions for image content (for both Websites); and

d. Site function like color options mislabeled (for the https://www.lamartina.com/lm website only).

22. The Websites also lack prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendants' merchandise from the Websites.

23. Plaintiff attempted to locate an "accessibility" notice, policy, or statement on the Websites that would direct him to a webpage with contact information for disabled individuals

who have questions or concerns abot, or who are having difficulties communicating with, the Websites. However, Plaintiff was unable to do so because no such link or notice, policy, or statement was provided on the Websites.

24. The fact that Plaintiff could not communicate with or within the Websites left him feeling excluded, as he is unable to participate in the same online computer shopping experience, with access to the merchandise, sales, discounts, and promotions as provided at the Websites and for use in the physical stores, as the non-visually disabled public.

25. Plaintiff desires and intends, in the near future once the Websites' access barriers are removed or remedied, to patronize Defendants' physical store and to use the Websites, but he is unable to fully do so as he is unable to effectively communicate with Defendant due to his severe visual disability and the Websites' access barriers. Thus, Plaintiff, as well as others who are blind or with visual disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26. Because of the nexus between Defendants' retail stores and the Websites, and the fact that the Websites clearly provide support and is connected to Defendants' retail stores for its operation and use, the Websites are intangible services, privileges and advantages of Defendants' brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both on-line and at its physical locations, which are places of public accommodations subject to the requirements of the ADA.

27. On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Websites by individuals with disabilities.

28. On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Websites by individuals with disabilities.

29. On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Websites by individuals with disabilities.

30. On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Websites by individuals with disabilities.

31. On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Websites by individuals with disabilities.

32. On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

33. On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

34. On information and belief, Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

35. On information and belief, Defendants haves not created and instituted on the Websites a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Websites, applications, and digital assets accessible to the visually disabled or blind community.

36. On information and belief, the Websites do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

37. On information and belief, Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Websites to visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise offered on the Websites online from their homes.

38. Thus, Defendants have not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Websites, in contravention of the ADA.

39. Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

40. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the Websites.

41. On information and belief, Defendants are, and at all times have been, aware of the barriers to effective communication within the Websites which prevent individuals with disabilities who are visually disabled from the means to comprehend information presented therein.

42. On information and belief, Defendants are aware of the need to provide full access to all visitors to the Websites.

43. The barriers that exist on the Websites result in discriminatory and unequal treatment of individuals with disabilities who are visually disabled, including Plaintiff.

44. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means

to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with their Websites' access and operation.

45. Notice to Defendants is not required because of Defendants' failure to cure the violations.

46. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

47. Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

## **COUNT I – VIOLATION OF THE ADA**

48. Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49. Pursuant to 42 U.S.C. §12181(7)(E), Defendants are a public accommodation under the ADA because they own, operate, or control the Websites, as defined within §12181(7)(E) and is subject to the ADA.

50. Pursuant to 42 U.S.C. §12181(7)(E), the Websites are covered under the ADA because they provides the general public with the ability to locate Defendants' physical stores, purchase merchandise that is available in the physicals stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical stores. The Websites thus are extensions of, gateways to, and intangible services, privileges and advantages of Defendants' Broward County, Florida physical store. Further, the Websites also serve to augment Defendants' Broward County, Florida physical store by providing the public information about the store and by educating the public as to Defendants' available merchandise sold through the Websites and in its physical store.

51. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54. Defendants' Websites must comply with the ADA, but they do not as specifically alleged hereinabove and below.

55. Because of the inaccessibility of the Websites, individuals with disabilities who are visually disabled are denied full and equal enjoyment of the information and services that Defendants have made available to the public on their Websites, and at their physical store, in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

56. The Websites were subsequently visited by Plaintiff's expert in October, 2019 and July 2020, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed, and that Defendants have made no material changes or improvements to the Websites to enable their full use, enjoyment and accessibility for visually disabled persons such as Plaintiff.  While Defendants did temporarily deactivate the www.lamartinausa.com website in response to the original Complaint filed in this lawsuit, it is beleived that this deactivation is temporary andt the website may be reinstated. Defendants also have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it added "accessibility"" notices, polices, or statements to provide a viable alternative means for blind and visually disabled person to access and navigate the Websites. Defendants thus have failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of viable and effective "accessibility" notices, policies or statements and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Websites not fully accessible to users who are blind and visually disabled, including Plaintiff.

57. More violations may be present on other pages of the Websites, which can and will be determined and proven through the discovery process in this case.

58. Further, the Websites do not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Websites' accessibility information and accessibility facts.

59. There are readily available, well established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics, and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Websites accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to the Defendants.

60. Defendants have violated the ADA -- and continue to violate the ADA -- by denying access to the Websites by individuals, such as Plaintiff, with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Websites are ongoing.

61. The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

62. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65. As alleged hereinabove, the Websites have not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

66. As a direct and proximate result of Defendants' failure to provide ADA compliant Websites, with a nexus to their brick and mortar physical store location, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendants' Websites and Borward County, Florida physical store.

67. Because of the inadequate development and administration of the Websites, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a) Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Websites to a statement as to the Defendants' policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Websites.

b) Require Defendants to take the necessary steps to make the Websites readily accessible to and usable by visually disabled users, and during that time period prior to the Websites being readily accessible, to provide an alternative method for individuals with visual disabilities to access

the information available on the Websites until such time that the requisite modifications are made, and

  c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Websites for purposes of viewing and locating Defendant's physical store, and becoming informed of and purchasing Defendants' merchandise online, and during that time period prior to the Websites being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Websites.

  76. Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

  WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

  A. A declaration that Defendants' Websites are in violation of the ADA;

  B. An Order requiring Defendants, by a date certain, to update the Websites, and continue to monitor and update the Websites on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Websites and effectively communicate with the Websites to the full extent required by Title III of the ADA;

C. An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Websites;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to its Websites;

F. An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Websites to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' Websites to be fully accessible to the visually disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Websites on how to conform

---

[1]  or similar.

all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Websites to identify any instances where the Websites are no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendants, by a date certain, to make publicly available and directly link from the Websites' homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Websites and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED: December 11, 2020.

| | |
|---|---|
| **RODERICK V. HANNAH, ESQ., P.A.**<br>Counsel for Plaintiff<br>4800 N. Hiatus Road<br>Sunrise, FL 33351<br>T. 954/362-3800<br>954/362-3779 (Facsimile)<br>Email: rhannah@rhannahlaw.com | **LAW OFFICE OF PELAYO DURAN, P.A.**<br>Co-Counsel for Plaintiff<br>4640 N.W. 7th Street<br>Miami, FL 33126-2309<br>T. 305/266-9780<br>305/269-8311 (Facsimile)<br>Email: duranandassociates@gmail.com |
| By  *s/ Roderick V. Hannah*<br>      RODERICK V. HANNAH<br>      Fla. Bar No. 435384 | By  *s/ Pelayo M. Duran*<br>      PELAYO M. DURAN<br>      Fla. Bar No. 0146595 |